**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Efren RAPETA–GARCIA, Defendant—
Appellant.**

**No. 05–50173.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 11, 2006.

Filed Feb. 28, 2006.

---

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1. We do not give a full recitation of the facts because the parties are already familiar with them.

Roger W. Haines, Jr., Esq., USSD—Office of the U.S., San Diego, CA, Jeffrey Oldham, Esq., U.S. Department of Justice, Washington, DC, for Plaintiff–Appellee.

Vincent J. Brunkow, Esq., Lori B. Schoenberg, Esq., FDSD—Federal Defenders of San Diego, Inc., San Diego, CA, for Defendant–Appellant.

Before: SCHROEDER, Chief Judge, FRIEDMAN * and LEAVY, Circuit Judges.

### MEMORANDUM **

Efren Rapeta–Garcia appeals from his jury conviction and sentence for being a deported alien found in the United States, in violation of 8 U.S.C. § 1326. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

### A. *Background*

A one-count indictment charged Rapeta–Garcia with being a deported alien "found in the United States" in violation of 8 U.S.C. § 1326(a).[1] Rapeta–Garcia stipulated to his Mexican citizenship and that he was previously deported. A jury convicted Rapeta–Garcia of the single count. The district court sentenced Rapeta–Garcia to 15 months' custody and Rapeta–Garcia timely appealed.

### B. *Analysis*

#### 1. *Jury Instructions*

■ Rapeta–Garcia argues that the jury instructions [2] misstated the element of consent because the instructions failed to distinguish between "consent to re-enter" and "consent to re-apply for admission." We have previously held that an instruction identical to the one given at Rapeta–Garcia's trial did not misstate an element of the crime. *United States v. Cervantes–Flores*, 421 F.3d 825, 834 (9th Cir.2005) ("While ambiguous and perhaps in need of clarification, the instruction does not misstate the element of the crime."). The possibility of ambiguity was lacking in *Cervantes–Flores* because the jury heard no evidence that the defendant had applied for consent from the Attorney General. *Id.* at 835 n. 6. Just like *Cervantes–Flores*, Rapeta–Garcia presented no evidence that he had consent to reapply for entry. Therefore, the instruction was not misleading, and the district court did not err in instructing the jury.

■ Rapeta–Garcia argues that the district court erred when it declined to instruct the jury that an unknowing or involuntary entry into the United States was a defense to the charged crime. None of the

---

* The Honorable Daniel M. Friedman, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1. 8 U.S.C. § 1326(a), provides:

[A]ny alien who—
(1) has been denied admission, excluded, [or] deported ... and thereafter
(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter of any prior Act, shall be fined under Title 18, or imprisoned not more than 2 years, or both.

2. The district court instructed the jury as follows:

The defendant is charged in the indictment as a deported alien found in the United States, in violation of Title 8 of the United States Code, Section 1326. In order for defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First: if the defendant is an alien; second: the defendant was deported from the United States; third, the defendant was found in the United States without the consent of the Attorney General or Secretary of the Department of Homeland Security or of any representative of the Department.

evidence supports the theory of unknowing re-entry. *See United States v. Rivera–Sillas*, 417 F.3d 1014, 1021 (9th Cir.2005) ("Because involuntary presence in the United States is the rare exception and not the rule, however, we allow an inference of voluntariness where the defendant has raised no evidence to the contrary."). Rapeta–Garcia requested a jury instruction that required the government to prove that Rapeta–Garcia "knew he was in the United States" and that he "committed an intentional act, that is, that he voluntarily entered the United States." The court refused to give the proposed instruction. Rapeta–Garcia presented no evidence and made no argument to the jury that, when he was apprehended in the middle of the night hiding in the brush well within the border of the United States, he "somehow came to be [there] involuntarily." *United States v. Jimenez–Borja*, 378 F.3d 853, 858 (9th Cir.2004) (quoting *United States v. Parga–Rosas*, 238 F.3d 1209, 1214 (9th Cir.2001)). The court did not err in instructing the jury.

### 2. *Evidentiary Rulings*

#### a. *Exclusion of the I–215(b) Form*

■ The I–215(b) form is an "affidavit of sworn statement" prepared by the Border Patrol following Rapeta–Garcia's arrest. Rapeta–Garcia answered "yes" to the officer's question: "Have you ever applied to the Attorney General of the United States for permission to reenter the United States?" Rapeta–Garcia moved to introduce this document when cross-examining Ms. Stag, the custodian of Rapeta–Garcia's "A-file."[3] The district court sustained the government's objection based upon hearsay.

The district court did not err in excluding admission of the I–215(b) form. In *United States v. Hernandez–Herrera*, 273 F.3d 1213, 1217–18 (9th Cir.2001), we held that admission of documents in an INS "A-file" were admissible by the government to prove alienage under the public records exception to the hearsay rule. Here, however, Rapeta–Garcia attempted to introduce the I–215(b) form during cross-examination of Ms. Stag to prove that he had told an INS agent that he had applied for permission to re-enter the U.S. This out of court statement was hearsay because it was offered at trial for the truth of the assertion that Rapeta–Garcia had applied for permission to reenter. *See* Fed. R.Evid. 801(c). A non-testifying defendant does not have the right to present hearsay statements that exculpate him, and the only way to present those statements is to testify. *See United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir.1988) ("It seems obvious defense counsel wished to place [the defendant's] statement to [the officer] before the jury without subjecting [the defendant] to cross-examination, precisely what the hearsay rule forbids.").

#### b. *Admission of Testimony About a Computer Database Search*

Rapeta–Garcia argues that the admission of evidence from a computer database regarding the absence of any application for permission to reenter the U.S. violated the Sixth Amendment.

■ In *United States v. Cervantes–Flores*, 421 F.3d 825, 834 (9th Cir.2005), we held that a certificate of nonexistence of record (CNR) is nontestimonial evidence under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and was properly admitted in a defen-

---

**3.** "An INS A–File identifies an individual by name, aliases, date of birth, and citizenship, and all records and documents related to the alien are maintained in that file." *United States v. Blanco–Gallegos*, 188 F.3d 1072, 1075 n. 2 (9th Cir.1999) (quotations omitted).

dant's jury trial for violation of 8 U.S.C. § 1326. The defendant in *Cervantes–Flores* argued that admission of the CNR, absent live testimony by the person who performed the records search, violated his rights under the Sixth Amendment Confrontation Clause. We rejected that argument: "[T]he CNR certified the nonexistence of a record within a class of records that themselves existed prior the litigation, much like business records." *Cervantes–Flores,* 421 F.3d at 833.

In this case, the government offered the live testimony of Ms. Stag, the custodian of Rapeta–Garcia's "A-file." Ms. Stag testified that she found no documentation that would lead her to conclude that Rapeta–Garcia had applied for permission to re-enter the U.S. She also testified that she performed a INS database check in the C.L.A.I.M.S. system ["computer link application information management system"]. She testified that if a person applied for permission to reenter, it would "show up on the database." She testified that she found no information in the computer C.L.A.I.M.S. system that indicated Rapeta–Garcia had applied for permission to reenter.

The court did not err in admitting the testimony of Ms. Stag. If the results of a computer database search absent live testimony by the person who performed the records search are admissible under *Cervantes–Flores,* the testimony of the person who actually performed the database search is admissible.

### 3. *Sentencing*

█ Rapeta–Garcia argues that the district court erred when it calculated his offense level and enhanced his sentence based upon the fact of a prior conviction.

Rapeta–Garcia's argument is foreclosed by *United States v. Weiland,* 420 F.3d 1062, 1079 n. 16 (9th Cir.2005) (holding that we remain bound to follow *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) unless it is explicitly overruled by the Supreme Court) and *United States v. Moreno–Hernandez,* 419 F.3d 906, 914 n. 8 (9th Cir. 2005) ("*Booker* bars the district court from considering only those facts not found by the jury *other than* the fact of a prior conviction" (citing *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005))).

AFFIRMED.